UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STEIN FIBERS, LTD.,
                       Plaintiff,

    -against-                                          1:08-CV-210 (LEK/ DRH)

BONDEX TELAS SIN TEJAR, C.A.
and MIGUEL PLITMAN,
                       Defendants.

## MEMORANDUM-DECISION AND ORDER

On February 22, 2008, Plaintiff Stein Fibers, Ltd. ("Plaintiff" or "Stein Fibers") commenced this action seeking to recover $421,650.38, plus interest and fees, resulting from Defendants' alleged breach of contract and conversion of Plaintiff's property. See Compl. (Dkt. No. 1). Presently before the Court is Defendants Bondex Telas Sin Tejar, C.A. ("Bondex") and Miguel Plitman's ("Plitman") Motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) on the grounds that (1) the court has no personal jurisdiction over them; (2) the causes of action are time-barred under the applicable statute of limitations; and (3) the Complaint fails to state a claim upon which relief can be granted in regards to the fifth, sixth, seventh and eighth causes of action. Mot. (Dkt. No. 7). Defendants' Motion also requests dismissal on the grounds of *forum non conveniens* and in deference to a prior pending action in Venezuela. Id.

In its response to Defendants' Motion, Plaintiff requests that the Court, in lieu of dismissal, transfer the case to the United States District Court for the Southern District of Florida. See Pl.'s Mem. in Opp'n at 12 (Dkt. No. 13, Attach. 2). On December 15, 2008, the Court issued an Order directing the parties to provide the Court with supplemental briefing addressing the issue of transfer.

1

Dkt. No. 16. Both parties submitted their supplemental briefs in timely fashion.

For the reasons discussed below, this Court lacks personal jurisdiction over the Defendants. As the Plaintiffs have failed to show that Florida would have jurisdiction, transfer is not appropriate. Therefore, this action is dismissed.

**I.     BACKGROUND**

Stein Fibers is a New York corporation headquartered in Albany County. Compl. ¶ 1. Since its inception in 1976, Stein Fibers has been a supplier of polyester staple fiber with a worldwide customer base. Pl.'s Mem. in Opp'n at 4. Stein Fibers operates three satellite offices across the United States, only one of which is relevant to this case: Fort Lauderdale, Florida. See id. Bondex is a foreign corporation having its principal place of business in the City of Guatire, Venezuela. Id.; Defs.' Mem. in Supp. at 4 (Dkt. No. 7, Attach. 2). Bondex manufactures mattresses and bedding products made from polyester fiber. Pl.'s Mem. in Opp'n at 4.

Stein Fibers and Bondex had maintained a business relationship as seller and buyer since approximately 1997. Pl.'s Mem. in Opp'n at 4. It appears from the record that Bondex ordered synthetic fibers from Stein Fibers' satellite office in Fort Lauderdale, Florida. See Defs.' Mem. in Supp. at 5; Stein Aff. ¶ 7 (Dkt. No. 13); Tomlinson Aff. ¶ 8 (Dkt. No. 13). Stein Fibers would then arrange for delivery to Bondex in Venezuela. Tomlinson Aff. ¶ 8. Plaintiff alleges that Bondex and its principals have come to the United States "on many occasions" in furtherance of this business relationship, including a meeting in January 2001 between Defendant Plitman and Ellen Tomlinson, Stein Fibers' sales representative and manager for the Fort Lauderdale office. Id. ¶¶ 1, 7.

Stein Fibers now alleges that it sold and delivered to Bondex numerous shipments of synthetic fibers; that Bondex accepted those shipments; that Bondex made use of the synthetic fibers

contained in those shipments; but that Bondex failed to pay for the materials. See Compl. ¶¶ 6-10.

Defendants move, inter alia, to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2) on the ground that the Court lacks personal jurisdiction over the Defendants. Bondex denies that it ever transacted business in New York, claiming that it has no offices, no employees, and no nexus with the forum. See Defs.' Mem. in Supp. at 2-3, 6. Defendant Plitman also denies that he has any nexus with New York, claiming that he has never visited New York for any business purpose. See id. at 6.

## II.     DISCUSSION

### A.     Personal Jurisdiction

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996) (citing Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994)). Prior to discovery, a plaintiff need only make a prima facie showing that jurisdiction exists and can make this showing through his own affidavits, pleadings and supporting materials. See Hollenbeck v. Comeq, Inc., 2007 WL 2484299, *2 (N.D.N.Y. Aug. 28, 2007) (Kahn, D.J.) (citations omitted). All pleadings and affidavits are construed in the light most favorable to the plaintiff, and all doubts are resolved in the plaintiff's favor. Cutco Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986). In addition, "'[t]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits.'" Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 198 (2d Cir. 1990) (quoting Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963)).

Plaintiff has not cited a specific section of the New York Civil Practice Law and Rules ("CPLR") for purposes of establishing this Court's jurisdiction over the Defendants. Plaintiff has clearly not alleged facts sufficient to support a prima facie showing that Defendants are engaged in such a continuous course of doing business in New York as to render the Defendants present in the state pursuant to the "general jurisdiction" provision of CPLR § 301. See, e.g., Ball, 902 F.2d at 198. Accordingly, CPLR § 302(a)– the New York "long-arm statute"– will govern the Court's determination of whether the Court has personal jurisdiction over the Defendants. The long-arm statute gives a New York court jurisdiction over a non-domiciliary defendant as to any claim "arising from the acts enumerated" in the statute. CPLR § 302(a). The pertinent provisions of the statute, CPLR § 302(a)(1)-(3), will be analyzed in turn.[1]

### 1.     CPLR § 302(a)(1)

The New York long-arm statute gives a court jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." CPLR § 302(a)(1). "A defendant transacts business in New York when he 'purposefully avails' himself of the privilege of conducting business there, thus invoking the benefits and protections of New York law." Credit Lyonnais Securities (USA), Inc. v. Alcantara, 183 F.3d 151, 153-54 (2d Cir. 1999) (citations omitted).

To determine whether a defendant has transacted business in New York within the meaning of CPLR § 302(a)(1), a court must look to the "totality of the circumstances" surrounding the defendant's alleged contacts with the state. See United Computer Capital Corp. v. Secure Prods.,

---

[1] As Plaintiff does not allege that the Defendants "own[], use[] or possess[] any real property situated within" New York, there is no need to analyze CPLR § 302(a)(4).

4

L.P., 218 F. Supp. 2d 273, 277 (N.D.N.Y. 2002). Factors considered when deciding whether a defendant has transacted business in New York include (1) whether the defendant has an ongoing contractual relationship with a New York corporation; (2) whether the contract at issue was negotiated in New York, and if so, whether the defendant later visited New York for the purpose of meeting the parties to the contract regarding the relationship; (3) whether the contract has a choice of law provision; and (4) whether payments were to be sent into New York or performance to be supervised from New York. Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996) (citations omitted). "Although all are relevant, no one factor is dispositive. Other factors may also be considered, and the ultimate determination is based on the totality of the circumstances." Agency Rent A Car, 98 F.3d at 29 (citing PaineWebber Inc. v. Westgate Group, Inc., 748 F. Supp. 115, 118 (S.D.N.Y. 1990)).

Applying the first factor, Plaintiff alleges that since 1997, the Defendants had an ongoing contractual relationship with Plaintiff (a New York corporation), and the Defendants do not contest this. See Pl.'s Mem. in Opp'n at 4. However, Agency Rent A Car and its progeny make clear that the jurisdictional requirements of CPLR § 302(a)(1) cannot be satisfied by the mere existence of an ongoing contractual relationship. Jurisdiction is proper only when the ongoing contractual relationship is augmented by other significant contacts by the defendant with the forum state. See Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc., 2 F. Supp. 2d. 470, 474 (S.D.N.Y. 1998) (concluding that an ongoing contractual relationship "would in itself be insufficient to confer jurisdiction under § 302(a)(1)"). Here, despite Defendants' ongoing contractual relationship with the Plaintiff, Defendants have not maintained enough other significant contacts with the forum to confer jurisdiction, as discussed below. Most of the Defendants' contact with the Plaintiff occurred

5

outside of New York, and while the Defendants did send some payments into New York, the goods at issue in the contract were shipped to Defendants in Venezuela from locations outside New York. See Tomlinson Aff. ¶ 8; Defs.' Mem. in Supp. at 5.

As to the second factor, the Plaintiff does not allege that the contract was negotiated in New York. Moreover, while the Plaintiff alleges that the Defendants have traveled to the United States several times in pursuit of the parties' long-standing business relationship, the Plaintiff only cites one specific example of such a meeting (which took place in Florida), and does not allege that any such meetings took place in New York. See Stein Aff. ¶ 7; Pl.'s Ex. 2 (Dkt. No. 13, Attach. 1). The record reveals that most of the Defendants' telephone and email contacts with the Plaintiff were directed to the Plaintiff's satellite office in Florida, further militating against a finding of jurisdiction over Defendants. See Pl.'s Ex. 2, 5-15 (Dkt. No. 13, Attach. 1); United Computer, 218 F. Supp. 2d at 277; see also Int'l Customs Assocs. v. Ford Motor Co., 893 F. Supp. 1251, 1261 (S.D.N.Y. 1995) (citing cases in which telephone and mail correspondence sent into New York was insufficient to establish jurisdiction). Moreover, to the extent that any of the Defendants' limited telephone and email contact with the Plaintiff in New York could be construed as contract negotiation, such "negotiation of the contractual terms by phone, fax or mail with the New York party is generally insufficient to support a finding of the transaction of business in New York" without allegations of more significant contacts by the Defendants with the forum state. United Computer, 218 F. Supp. 2d at 278.

Nor does the Plaintiff allege that the contract contains a choice of law provision. This factor represents a larger policy ingrained in contract law, namely that sophisticated contracting parties are free to create their own terms. While a choice of law provision "does not constitute a voluntary

6

submission to personal jurisdiction," Cutco Indus., Inc. v. Naughton, 806 F.2d 361, 367 (2d Cir. 1987), it is a significant factor when assessing whether a defendant has transacted business within the meaning of CPLR § 302(a)(1). The Supreme Court has noted that when a defendant has agreed to a choice of law provision specifying that a particular state's law will govern a contract, that decision must be given weight when determining whether the defendant "has 'purposefully invoked the benefits and protections of [that] State's laws' for jurisdictional purposes." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 482 (1985); see Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2007) ("A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law.").

As to the fourth factor, Plaintiff asserts that this Court has jurisdiction over the Defendants because Defendants "dealt with billing issues in New York and sent payment to New York." Stein Aff. ¶ 17. Again, it is clear that CPLR § 302(a)(1) requires more. See Roper Starch, 2 F. Supp. 2d. at 470. In Roper Starch the plaintiff, a New York corporation, sued the defendant, a Michigan corporation, for breach of contract and unjust enrichment. 2 F. Supp. 2d. at 471-72. In dismissing the action for lack of personal jurisdiction, the court concluded that "merely sending payments [as well as other mailings and faxes] to New York is not sufficient to establish personal jurisdiction over a defendant under § 302(a)(1)," even assuming *arguendo* that the parties had an ongoing contractual relationship. Id. at 474-75. This Court finds the rationale of the Roper Starch court to be persuasive.

In summary, the Court concludes that the totality of the circumstances do not support a finding of jurisdiction under CPLR §302(a)(1). This case can be distinguished from other cases involving commercial disputes where courts have found jurisdiction under this section. For

example, the Second Circuit found jurisdiction to be proper in Agency Rent A Car. However, the decision did not hinge solely on the basis of the parties' ongoing contractual relationship or the provision of payments by defendants into New York. Rather, the court listed additional determining factors, such that defendants remained in almost daily contact with the plaintiff's headquarters in New York, and the defendants had established a professional organization in New York to act as their agent in representing their collective interests to the plaintiff in New York. Agency Rent A Car, 98 F.3d at 30. The court later described the defendants' contacts with New York as "continual, repetitive, and essential to the [defendants'] businesses." Id. Such a characterization cannot be supported on the basis of the record in the present case.

### 2.     CPLR § 302(a)(2)

Plaintiff also cannot demonstrate a prima facie case of personal jurisdiction under CPLR § 302(a)(2), which gives a court jurisdiction over a non-domiciliary who "commits a tortious act within the state." In addition to claims related to the Defendants' alleged breach of contract, Plaintiff's Complaint includes tort claims for conversion. Compl. ¶¶ 23, 32. However, the Plaintiff has not alleged that the Defendants were physically present in New York when they committed the alleged wrongful acts. Thus, the Court cannot exercise jurisdiction over the Defendants pursuant to CPLR § 302(a)(2). See Bensusan Restaurant Corp. v. King, 126 F.3d 25, 27-29 (2d Cir. 1997).

### 3.     CPLR § 302(a)(3)

Finally, Plaintiff also cannot demonstrate a prima facie case of personal jurisdiction under CPLR § 302(a)(3). This section of the long-arm statute gives a court jurisdiction over a non-domiciliary who

> commits a tortious act without the state causing injury to person or property within the state . . . if [the non-domiciliary]

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

CPLR § 302(a)(3). As the alleged tortious act (conversion of Plaintiff's property) was clearly committed outside of New York, the threshold inquiry here becomes whether the alleged injury to the Plaintiff occurred "within the state."

In cases of commercial torts as those alleged here, the situs of the injury is "'the place where the critical events associated with the dispute took place.'" Mije Associates v. Halliburton Servs., 552 F. Supp. 418, 420 (S.D.N.Y. 1982) (quoting American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., 439 F.2d 428, 432 (2d Cir. 1971)). In regards to the tort of conversion, the injury to the plaintiff is deemed to occur where the defendant's conversion of the property actually occurred, not where the plaintiff is located. See Popper v. Podhragy, 48 F. Supp. 2d 268, 274 (S.D.N.Y. 1998); Chemical Bank v. World Hockey Ass'n, 403 F. Supp. 1374, 1380 (S.D.N.Y. 1975).

It is clear that Plaintiff's New York domicile, without more, cannot be regarded as a "critical event" sufficient to bestow jurisdiction for purposes of CPLR § 302(a)(3). See Mije Associates, 552 F. Supp. at 420 (citing cases). Moreover, any alleged conversion of the Plaintiff's property took place in Venezuela, as that is where the Defendants took possession of the property. More broadly, the "critical events associated with the dispute" took place almost exclusively in Venezuela and Florida, not New York. The fact that the alleged conversion would cause commercial harm for Plaintiff in New York is not enough to conclude that the injury occurred within the state. "'The

occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York.'" Whitaker v. American Telecasting, Inc., 261 F.3d 196, 209 (2d Cir. 2001) (quoting United Bank of Kuwait v. James M. Bridges, Ltd., 766 F. Supp. 113, 116 (S.D.N.Y. 1991)); see also Baptichon v. Nevada State Bank, 304 F. Supp. 2d 451, 460 (E.D.N.Y. 2004). Therefore, the Court cannot exercise jurisdiction over the Defendants pursuant to CPLR § 302(a)(3).

As the Court concludes that there is no statutory basis for jurisdiction over the Defendants, the Court need not address whether the assertion of jurisdiction over Defendants would violate due process.

**B.    Transfer**

As outlined above, this Court lacks personal jurisdiction over the Defendants in this action. Therefore, the Court will not address the other grounds upon which Defendants move to dismiss the case. See Mende v. Milestone Technology, Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) ("Before addressing Defendant's Rule 12(b)(6) motion to dismiss, the Court must first address the preliminary question[] of personal jurisdiction") (citing Arrowsmith v. United Press Int'l, 320 F.2d 219 (2d Cir. 1963)).

While Plaintiff has not formally moved to transfer the case, in its opposition to the Defendants' Motion to dismiss, the Plaintiff requests that "[i]n the event the Court determines that jurisdiction . . . [is] not appropriate in this Court, . . . transfer be affected to the Florida Southern District Court in Miami, Florida." Pl.'s Mem. in Opp'n at 12.

Motions to transfer are left to "the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." Publicker Indus. Inc. v. United

States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 117 (2d Cir. 1992) (citing Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29, (1988)).  A federal court has the power to transfer an action to another federal court even if the transferor court lacks personal jurisdiction over the defendants.  Fort Knox Music Inc. v. Baptiste, 257 F.3d 108, 112 (2d Cir. 2001) (citing Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465 (1962) and Corke v. Sameiet M. S. Song of Norway, 572 F.2d 77, 80 (2d Cir. 1978)).

Before transferring a case, the transferor court must be satisfied that the transferee court is one where the action "might have" or "could have" been brought– that is, that the transferee court would have personal jurisdiction over the defendant.  28 U.S.C. §§ 1404(a), 1406(a).  As this is a diversity action, whether a federal district court in Florida would have jurisdiction over the Defendants turns on whether a state court in Florida would have such jurisdiction.  Ball, 902 F.2d at 198; Stubbs v Wyndham Nassau Resort and Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006).   If the transferee court would have jurisdiction, the Court may transfer the case if doing so would serve the convenience of the parties and be in the interest of justice.  28 U.S.C. § 1404(a).

Thus, the threshold question that the Court must address is whether a Florida court would have jurisdiction over the Defendants in this action pursuant to Florida's long-arm statute, and if so, whether the conferral of such jurisdiction would violate due process.  Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989).  Under Florida law, the plaintiff bears "the burden of establishing a prima facie case of personal jurisdiction over a nonresident defendant." Meier ex rel. Meier v. Sun Intern. Hotels., Ltd., 288 F.3d 1264, 1268-69 (11th Cir. 2002) (citation omitted).  The Plaintiff cites two sections of the Florida long-arm statute in support of its position that Florida courts would have jurisdiction.  Plaintiff first cites section 48.193(1)(a) of the Florida Statutes, which provides that

11

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
>> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
>> . . .

Fla. Stat. § 48.193(1)(a). To establish that a defendant is carrying on a business for purposes of this section, the defendant's activities "'must be considered collectively and show a general course of business activity in the State for pecuniary benefit.'" Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996) (quoting Dinsmore v. Martin Blumenthal Associates, Inc., 314 So.2d 561, 564 (Fla. 1975)). "Factors relevant, but not dispositive, to this analysis include the presence and operation of an office in Florida . . . the possession and maintenance of a license to do business in Florida . . . the number of Florida clients served . . . and the percentage of overall revenue gleaned from Florida clients." Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir. 2005) (internal citations omitted).

In support of its position that the Defendants conduct business in Florida within the meaning of § 48.193(1)(a), Plaintiff alleges that the Defendants regularly communicated with the Plaintiff at Plaintiff's Florida office; that Defendants visited with the Plaintiff's representative in Florida to discuss the transactions at issue in this dispute as well as other similar transactions; and that the Defendants arranged for delivery of samples to an address for the Defendants in Miami. Notably absent from these allegations are any of the factors mentioned in Horizon. The Plaintiff does not allege that Defendants have an office or agency in Florida or that the Defendants maintain a license

to do business in Florida.  The Plaintiff also does not allege that the Defendants serve any clients in Florida other than the Plaintiff's Florida office, and does not address how much of the Defendants' revenue is derived from Florida clients.  While none of these factors are dispositive of whether the Defendants carry on a business in Florida, see Horizon Aggressive Growth, 421 F.3d at 1167, the jurisdictional allegations the Plaintiff does make fall far short of the general course of in-state business activity required to confer jurisdiction under § 48.193(1)(a).  See, e.g., Horizon, 421 F.3d at 1168 (telephonic and electronic communication into Florida were insufficient to confer personal jurisdiction under § 48.193(1)(a) over defendant who did not maintain an office in Florida and was not licensed to do business in the state); Sculptchair, 94 F.3d at 628 (defendants who maintained no offices or agents in Florida, neither manufactured nor sold products in Florida, and had only limited telephone and in-person contact with plaintiff's representative in the state were held to not be carrying on business in Florida); Flight Source Intern. Inc. v. Carolex Air, LLC, 2008 WL 4643319, *3 (M.D.Fla. Oct. 20, 2008) (concluding that plaintiff failed to establish personal jurisdiction under § 48.193(1)(a) where plaintiff proffered "no evidence that any of the defendants ever conducted any business in the state of Florida other than the transaction at issue in this lawsuit.").

The Plaintiff also has not alleged sufficient facts to establish jurisdiction under § 48.193(2), the so-called "general jurisdiction" provision.  This section provides that

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

13

Fla. Stat. § 48.193(2). "Florida courts have found 'substantial and not isolated activity' to mean 'continuous and systematic general business contact' with Florida." Autonation, Inc. v Whitlock, 276 F. Supp. 2d 1258, 1262 (S.D.Fla. 2003) (quoting Woods v. Nova Cos. Belize Ltd., 739 So.2d 617, 620 (Fla. 4th DCA 1999)); see also General Cigar Holdings, Inc. v. Altadis, S.A., 205 F. Supp. 2d 1335, 1343 (S.D.Fla. 2002) (defendant's contacts with Florida "must be especially pervasive and substantial to satisfy § 48.193(2)."); Price v. Point Marine, Inc., 610 So.2d 1339, 1341 (Fla. 1st DCA 1992) (sporadic activities or visits do not constitute substantial activity) (quotation and citations omitted). The standard for general jurisdiction "is considerably more stringent" than the standard for specific jurisdiction outlined in § 48.193(1). Lauzon v. Joseph Ribkoff Inc., 77 F. Supp. 2d 1250, 1253 (S.D.Fla. 1999) (quoting Prentice v. Prentice Colour, Inc., 779 F. Supp. 578, 583-84 (M.D.Fla. 1991)).

     Plaintiff alleges the Defendants' substantial activity in Florida can be shown by the correspondence from the Defendants to the Plaintiff's Florida office, the Defendants' orders sent to Plaintiff's Florida office, and Defendants' visits to Florida in pursuit of the business relationship. These contacts do not suffice to confer general jurisdiction over the Defendants. The Plaintiff only cites one case in support of its argument for general jurisdiction over the defendants, and that case is distinguishable. In Future Tech Intern., Inc. v. Tae Il Media, Ltd., 944 F.Supp. 1538 (S.D.Fla. 1996), the plaintiff (a buyer/ distributer of computer equipment) brought suit against a Korean manufacturer and associated companies with whom the plaintiff did business. The court found that the defendants had engaged in substantial and systematic business activity in Florida, thus conferring general jurisdiction over them. The defendants and their representatives traveled to Florida on at least six occasions (including three major meetings) over the course of a year, to meet

with the plaintiff's representatives regarding their existing business relationship and discuss future business. 944 F. Supp at 1556, 1558-59. By contrast, while the Plaintiff alleges that the Defendants came to Florida on "several occasions" in pursuit of their business relationship, the Plaintiff cites to only one example of such a meeting– and the record shows that the meeting consisted of Defendant Plitman meeting the Plaintiff's representative for lunch while Plitman was on vacation in Florida. See Dkt. No. 17 at 20.

Moreover, the case law in Florida consistently shows the lack of general jurisdiction over defendants who have had similar levels of contact with Florida as have the Defendants in this case. For example, in Alan Richard Textiles, Ltd. v. Vertilux, Inc., 627 So.2d 529 (Fla. 3d DCA 1993), the court found that personal jurisdiction was lacking over a New York corporation that had no agents, employees, or office in Florida. 627 So.2d at 530. The defendant had ordered goods from a Florida corporation and had allegedly failed to pay a debt in Florida, but such acts were insufficient to confer personal jurisdiction. Id. In Bluewater Trading LLC v. Fountaine Pajot, S.A., 2008 WL 2705432 (S.D.Fla. July 9, 2008), the court held that the defendant's placement of advertisements in magazines distributed in Florida, attendance in Florida once a year and transmission of ten emails a week to another defendant in Florida were insufficient to confer general jurisdiction. 2008 WL 2705432 *4 (noting that "Courts have held that far more extensive contacts were insufficient to support general jurisdiction."). In Ahern v. Pacific Gulf Marine, Inc., 2008 WL 706501 (M.D. Fla. 2008), the court held that the defendant's minimal sales to Florida customers (less than 2% of defendant's revenues) and purchase of an advertisement through a Florida company were insufficient to confer general jurisdiction on defendant. 2008 WL 706501 *3-4. In Price v. Point Marine, Inc., 610 So.2d 1339, 1341 (Fla. 1st DCA 1992), the court affirmed the trial court's ruling

that there was no general jurisdiction over defendant/appellee corporation whose only contacts with Florida were the "occasional solicitation of business and three incidents of appellee's presence in the state." 610 So.2d at 1341.

As the Plaintiff has failed to make out a prima facie case of personal jurisdiction under the Florida long-arm statute, the Court need not address whether the conferral of jurisdiction would violate due process. Moreover, the Court need not address whether transfer would serve the convenience of witnesses or be in the interest of justice. Accordingly, the Defendants' Motion to dismiss is granted.

### III.   CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that the Defendants' Motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction (Dkt. No. 7) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** in its entirety; and it is further

**ORDERED**, that the Clerk serve a copy of this order on all parties.

**IT IS SO ORDERED**.

DATED:   February 10, 2009
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge